UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DEBORAH BOLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16-cv-00059 |
| ) | Judge Trauger/Brown |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Commissioner's denial of her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"). For the following reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff's *Motion for Summary Judgment* (Doc. 7) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

### I.  PROCEDURAL HISTORY

This is Plaintiff's second application for disability insurance benefits and supplemental security income. She filed her previous application on June 9, 2009. (AR, p. 296).[1] After an administrative hearing (*Id.* at 265-290), her application was denied on February 8, 2011. (*Id.* at 293-308). Her most recent application (*Id.* at 480-489) was denied initially and on reconsideration (*Id.* at 309-310, 375-376). Administrative hearings were convened on October 29, 2014 (*Id.* at 231-264) and April 29, 2015 (*Id.* at 208-230). The presiding administrative law

---

[1] Citations to the administrative record ("AR") (Doc. 5) are to the Bates stamp at the lower right corner of the page.

1

judge ("ALJ") issued an unfavorable decision on June 16, 2015. (*Id.* at 184-207). The Appeals Council declined to review the ALJ's decision. (*Id.* at 1-7).[2] Plaintiff appealed the Commissioner's decision to this Court. (Doc. 1). The matter was referred to the Magistrate Judge. (Doc. 9). Presently pending is Plaintiff's fully briefed *Motion for Summary Judgment* (Docs. 7, 7-1, 8).

## II. REVIEW OF THE RECORD

The parties and the ALJ thoroughly summarized the medical and testimonial evidence of record. To the extent specific portions of the record are relevant, they are discussed in the analysis of the claims of error below. Upon review of the record and two administrative hearings, the ALJ made the following findings of fact and conclusions of law. Plaintiff was insured under the Act through June 30, 2013. (AR, p. 190). She had not engaged in substantial gainful activity since February 9, 2011. (*Id.*) She suffered from several severe impairments, but she did not have an impairment or combination of impairments that satisfied the criteria for a listed impairment. (*Id.*). Plaintiff's residual functional capacity ("RFC") permitted her:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she would be precluded from climbing ladders, ropes, or scaffolds; she could no more than occasionally bend, stoop, bend from the waist to the floor, crouch, crawl, kneel, or climb stairs or ramps; she would be precluded from no more than frequent gross and fine manipulation; she could not work around hazards such as dangerous or moving machinery or unprotected heights; she would be able to carry out simple instructions; she would be limited to no more than occasional changes in the workplace; she would be limited to occasional interaction with the public, coworkers, and supervisors; she would require the use of a cane for ambulation; and she could not operate motor vehicles.

(*Id.* at 191) (emphasis omitted). The ALJ additionally found Plaintiff could not perform any past relevant work, but she could perform other work in the national economy given her age,

---

[2] Though Plaintiff submitted new evidence to the Appeals Council (AR, pp. 10-175), the Court is precluded from considering this evidence for purposes of substantial evidence review. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

2

education, work experience, and RFC. (*Id.* at 200). Finally, the ALJ concluded Plaintiff was not disabled for purposes of the Act from February 9, 2011, to the date of the decision. (*Id.* at 201).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's final disability decision is limited to determining whether the decision is supported by substantial evidence and whether the decision was made using the correct legal standards. *Miller*, 811 F.3d at 833 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Though the ALJ's decision may otherwise be supported by the record, failure to follow the agency's rules and regulations may show a lack of substantial evidence. *Id.* (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)).

#### B. Administrative Proceedings

The regulations implementing the Act set forth a five-step test for determining whether a claimant is disabled:

(1) the claimant is not disabled if she is engaged in substantial gainful activity;

(2) the claimant is not disabled if she does not have a severe medically determinable impairment that meets duration requirements;

(3) the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration;

(4) the claimant is not disabled if based on her RFC she can perform past relevant work; and

(5) the claimant is not disabled if she can perform other work based on her RFC, age, education, and work experience.

3

20 C.F.R. §§ 404.1520(a)(1), (4), 416.920(a)(1), (4). The burden of proof rests on the claimant for the first four steps, and the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## IV. CLAIMS OF ERROR

Plaintiff submits five claims of error: (1) the ALJ should have concluded Plaintiff satisfied the listings at step three of the evaluation; (2) the ALJ gave too much weight to a non-examining state examiner's opinion; (3) the ALJ should have assigned a more-restrictive RFC to Plaintiff; (4) the ALJ should have adopted vocational expert testimony concerning a more-limited RFC than selected by the ALJ; and (5) the ALJ erred by finding Plaintiff less than credible. (Doc. 7-1, pp. 3, 13-24).

## V. ANALYSIS

### A. Application of the Listings

Plaintiff first argues she is entitled to disability benefits under listings 1.02, 1.04, and 12.06. (*Id.* at 13-16). Specifically, she contends the ALJ should have given controlling weight to opinion evidence submitted by her treating physician, Dr. Harold Lowe, in which he found she satisfied these listings (AR, pp. 1124-1125, 1128). (Doc. 7-1, pp. 13-16).

At the third step of the disability evaluation process, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant is "disabled" for purposes of the Act if her impairments meet or medically equal an impairment listed in Appendix 1 to the regulations. *Id.* The claimant bears the burden of establishing the elements of the listing are satisfied. *Foster*, 279 F.3d at 354.

4

Opinion evidence submitted by a treating physician should be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques[3] and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if a treating provider's opinion is not entitled to controlling weight, the ALJ should nevertheless give the opinion the weight it deserves taking the following factors into consideration: the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by medical evidence, whether the opinion is consistent with the record as a whole, the source's specialization, and any other relevant factors. *Id.* §§ 404.1527(c), 416.927(c). Ultimately, the ALJ must provide "good reasons" for the weight selected, and these reasons need to be supported by the evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

### 1. Listings 1.02 (Major Dysfunction of a Joint) and 1.04 (Disorders of the Spine)

The ALJ found Plaintiff did not suffer from an impairment of listing level severity. (AR, p. 190). Dr. Lowe's opinion that Plaintiff satisfied the criteria for listings 1.02 and 1.04 was rejected in the following:

> Dr. Lowe also provided check-the-box answers to questions whether the claimant has a major dysfunction of the joints resulting in meeting listing 1.02. Dr. Lowe opined that the claimant does meet listing 1.02 due to major joint dysfunction, chronic joint pain, and joint space narrowing relating to one major peripheral weight-bearing joint resulting in the inability to ambulate effectively. Dr. Low[e] also opined that the claimant meets listing 1.04 relating to disorders of the spine resulting in compromise of a nerve root or the spinal cord. Dr. Lowe opined that the medical evidence of record includes evidence of nerve root compression accompanied by sensory or reflex loss with positive straight leg raise tests (sitting and supine) when involvement of the lower back is concerned. . . . (Exhibit B21F). . . .

---

[3] As recently explained, "[d]iagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. §§ 404.1502(c), 416.902(g).

> The undersigned notes that the diagnostic medical evidence of record does not remotely support a finding that the claimant has a lower extremity or lower back conditions that is as severe as was reported in Dr. Lowe's opinions. There is no evidence to support a finding that her conditions meet a listing or would cause her to be as limited as Dr. Lowe opined in Exhibit B21F. The medical evidence of record therefore does not remotely support Dr. Lowe's opinions that the claimant's alleged impairments meet a listing. In fact, there is so little support for Dr. Lowe's opinion in the medical evidence of record that Dr. Lowe's opinions carry very little weight. ***For example, there was no positive straight leg raise tests reported in the medical evidence of record and diagnostic evidence was mostly unremarkable.*** In sum, there was very little relevant evidence in the medical evidence of record to support the opinions offered by Dr. Lowe regarding the claimant's physical complaints. (Exhibit B21F). . . .
>
> Little weight is given to the physical limitations opinions of the treating physician, Dr. Lowe, in Exhibit B21F. The opinions were not supported by Dr. Lowe's own treatment records. The diagnostic evidence of record did not support the extreme limitations ascribed to the claimant. The opinions included mental health opinions for which Dr. Lowe is not a specialist. The opinions indicated that the claimant's various impairments meet three separate medical listings which is an opinion that is not remotely supported by the medical evidence of record for the reasons set forth above and because the claimant's impairments do not satisfy the various requirements of those listings. Dr. Lowe perhaps has a treating relationship with the claimant that goes back for several years and the opinions were such that they provided a greater benefit to the claimant than the medical evidence of record would support. For these and other reasons set forth herein, the undersigned finds that the opinions in Exhibit B21F offered by Dr. Lowe are given little weight.

(*Id.* at 195, 199) (emphasis added).

Having considered Dr. Lowe's specialization and treatment relationship with Plaintiff, the ALJ provided good reasons for giving his opinion little weight: objective diagnostic techniques did not support his check-the-box opinions. The ALJ had previously summarized the mostly unremarkable diagnostic evidence concerning Plaintiff's low back pain:

> The claimant has a history of treatment for lower back pain complaints. However, diagnostic evidence was largely unremarkable, and with medications, the claimant reported moderate level 5 out of 10 pain on the pain scale. [AR, p. 715] In August 2011, the claimant had an MRI of the lumbar spine that was normal and showed no degenerative disc disease or acute abnormality. [AR, p. 696] Another August 2011 treatment record indicated that a prior steroid injection to the lower back

6

> resulted in the claimant's lower back pain and left lower extremity radiating symptoms "feeling better." [AR, p. 618] (Exhibit B2F).
>
> Also, an August 2012 MRI of the lumbar spine showed no significant extradural defects, no fractures, no subluxation, adequate spinal canal, patent neural foramen, and hemangioma at L3. [AR, pp. 815, 905] An X-ray of the lumbar spine in the same month was normal. [AR, pp. 817, 906] Additionally, the undersigned notes that a July 2012 physical examination indicated a negative straight leg raise test, and normal bilateral lower extremity strength and normal bilateral lower extremity senses. [AR, p. 886] The diagnostic evidence of record suggests that the claimant does not have limitations from lower back pain that are as severe as the claimant has alleged. (Exhibits B4F, B5F, and B7F). . . .
>
> The claimant has made complaints about cervical spine pain. A January 2013 MRI of the cervical spine was within normal limits. [AR, pp. 924, 1000] (Exhibits B7F and B12F).

(*Id.* at 193-194). The August 14, 2011 MRI of Plaintiff's lumbar spine and the January 2013 MRI of Plaintiff's cervical spine also showed no evidence nerve root or spinal cord compression. (*Id.* at 815, 905, 924, 1000). In addition to the examples provided by the ALJ, a test on January 4, 2011 showed normal alignment of the lumbar spine, no fracture, and no significant disc space narrowing. (*Id.* at 697).

Further, as noted by Defendant, diagnosis and evaluation of impairments in listings 1.02 and 1.04 should be supported by diagnostic imaging, such as an x-ray, a CAT scan, or a MRI. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(C)(1). Specifically, listing 1.02 requires "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *Id.* § Pt. 404, Subpt. P, App. 1, § 1.02. As for listing 1.04, there must be a disorder of the spine—such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture"— that results in compromise of a nerve root or the spinal cord. *Id.* § Pt. 404, Subpt. P, App. 1, § 1.04. Because the diagnostic tests summarized by the ALJ reveal no evidence of "joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" for listing 1.02 or a spinal

7

disorder "resulting in compromise of a nerve root . . . or the spinal cord" for listing 1.04, Plaintiff does not satisfy the listings criteria. *See id.* § Pt. 404, Subpt. P, App. 1 §§ 1.02, 1.04.

Rather than identifying portions of the record that objectively establish the required criteria, Plaintiff dedicates a majority of her argument to asserting Dr. Lowe's opinions were due greater weight. She contends Dr. Lowe's opinions were supported by clinical and laboratory diagnostic techniques, not inconsistent with other substantial evidence in the record, and were supported by the entirety of his medical records. (Doc. 7-1, pp. 14-15). In doing so, she failed to comply with the Court's requirement to support claims of error with specific citations to the record (Doc. 6, p. 2). "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Plaintiff cites one specific error in the ALJ's rationale for giving Dr. Lowe's opinions little weight: whereas Dr. Lowe stated the record did not evidence a positive straight leg raise, a September 30, 2011 treatment note from Dr. Senter at Cleveland Medical and Back Pain Clinic showed "double-leg raise test positive bilaterally." (Doc. 7-1, pp. 14-15) (AR, p. 720). Plaintiff correctly identified Dr. Senter's note. However, this oversight does not warrant reversal. One of the criteria used to satisfy listing 1.04 is a positive straight leg raise. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A). Whether Plaintiff does indeed satisfy that criteria is beside the point, as the record does not indicate Plaintiff suffered from a disorder of the spine resulting in compromise of the nerve root or the spinal cord—a prerequisite for listing 1.04. *See id.* § Pt. 404, Subpt. P, App. 1, § 1.04. Further, as noted by Defendant, Social Security Acquiescence Ruling 15-1(4) provides that all criteria of listing 1.04 must be present simultaneously and continuously for at least twelve months. The Ruling states:

> Our policy is that listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present: (1) Neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .
>
> [W]hen the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A. . . .
>
> In addition to meeting the severity requirement, in order to meet the duration requirement, the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months.

SSAR 15-1(4), 80 FR 57418-02, 57420 (S.S.A. Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)). While Dr. Senter found a positive straight leg raise bilaterally in September 2011, another provider found a negative straight leg raise in July 2012. (AR, pp. 720, 886). Because Plaintiff's response to the straight leg raise waxed and waned over time and was not continuous for twelve months, Plaintiff did not satisfy this element of listing 1.04.

### 2. Listing 12.06 (Anxiety Related Disorders)

With respect to listing 12.06, the ALJ explained Plaintiff did not satisfy the "B" criteria of the listing because Plaintiff only exhibited mild restriction of activities of daily living, moderate difficulties in social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation for extended duration. (*Id.* at 190-191). The ALJ then concluded Plaintiff did not satisfy the "C" criteria of the listing which required complete inability to function independently outside the home. (*Id.* at 191); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06(C). Dr. Lowe's opinion evidence was additionally dismissed:

> Likewise, Dr. Lowe's opinion regarding the claimant's mental health condition carries very little weight. Dr. Lowe is not a specialist mental health care provider. In Exhibit B21F there was an opinion included relating to the claimant's mental health limitations. The opinion stated that Dr. Lowe believes that the claimant's anxiety related disorder meets listing 12.06 due to recurrent severe panic attacks

9

> and recurrent obsessions or compulsions, as well as marked limitations in activities of daily living, social functioning, maintaining concentration, persistence , and pace, and repeated episodes of decompensation. (Exhibit B21F). . . .
>
> Likewise, little weight is given to the mental limitations opinions offered by Dr. Lowe in Exhibit B21F. There is a lack of medical evidence, lack of treatment history, and lack of medication history to support a finding that the claimant would meet the listing relating to anxiety disorders. The claimant has hardly had any specialized mental health treatment over the years. She has primarily received treatment from her primary care physician. In sum, the evidence does not remotely support Dr. Lowe's conclusions regarding the claimant's mental health limitations and his mental health opinions are therefore given little weight.

(AR, pp. 195-196, 199).

In addition, Dr. Lowe's own opinions contradict one another. Dr. Lowe opined Plaintiff's impairments ***did not affect*** her ability to understand, remember, and carry out instructions, ability to respond appropriately to supervision, co-workers, and work pressures, or any other capabilities. (*Id.* at 1122-1123). He later opined she satisfied the criteria for an anxiety disorder, in part, because she was ***markedly impaired*** in her abilities to maintain social functioning, concentration, persistence, or pace. (*Id.* at 1128).

Aside from her conclusory arguments that Dr. Lowe's opinion evidence was supported by the record, Plaintiff provides no additional evidence that she satisfies listing 12.06. She fails to cite instances of severe anxiety attacks, mental health treatment, or medication history. Nor does Plaintiff counter the ALJ's findings that Dr. Lowe was not a mental health care provider. During the administrative hearing, Plaintiff's attorney confirmed that Dr. Lowe does not have any particular expertise in the field of psychology or psychiatry. (*Id.* at 229). Absent any real attempt to challenge the ALJ's listing 12.06 finding, this claim is meritless.

10

## B. Weight Given to State Examiner's Opinion Evidence

Plaintiff next claims the ALJ inappropriately weighed the medical opinions, believing the ALJ gave too much weight to non-examining state physician Dr. Puestow's opinion compared to the low weight assigned to Dr. Lowe's opinion as a treating physician. (Doc. 7-1, pp. 16-17).

The ALJ must consider opinion evidence submitted by non-examining state agency medical consultants. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Though the ALJ is not bound by these opinions, they are persuasive evidence because state agency medical consultants are highly qualified and are experts in social security disability evaluations. *Id.*; SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996).

Dr. Puestow received Plaintiff's entire record before producing his opinion. (AR, p. 213). The ALJ summarized and gave some weight to Dr. Puestow's opinion evidence in the following:

> An independent medical expert, Eric Peustow, M.D., provided answers to medical interrogatories relating to the claimant's physical impairments dated December 2014. Dr. Peustow indicated that the claimant's allegations of pain and dysfunction exceeded those expected relating to carpal tunnel syndrome, chronic headaches, and alleged degenerative disc disease, and that there was no objective basis for the use of narcotics for the claimant's pain. Dr. Peustow opined that the claimant would be able to lift and carry 50 pounds occasionally and 20 pounds frequently; she could sit for 4 hours, stand for 3 hours, and walk for 3 hours at one time without interruption; she could sit for 8 hours, stand for 4 hours, and walk for 4 hours for 4 hours each or for 6 out of 8 hours total in a single workday; the claimant does not require the use of a cane to ambulate; the claimant could continuously use her hands and feet; she should never climb ladders or scaffolds, but she could continuously perform all other postural activities; she should never work at unprotected heights, she could occasionally work around moving mechanical parts and operate a motor vehicle, and she could continuously work in extremes of heat and cold, around vibrations, in humidity and wetness, and around dust, odors, fumes, and pulmonary irritants. (Exhibit B19F). . . .
>
> Some weight is given to the independent medical expert, Dr. Peustow, in Exhibit B19F. Whereas he correctly identified the fact that the medical evidence of record does not support the claimant's allegations of physical limitations, and that she should never climb such things as ladders and scaffolds, work at unprotected heights, etc., the lifting and carrying restrictions far exceeded the residual

11

> functional capacity set forth above. For these reasons, the opinion in Exhibit B19F is given some weight.

(*Id.* at 196, 199).

Plaintiff questions Dr. Puestow's finding that Plaintiff did not suffer from degenerative disc disease (*Id.* at 1110) because Dr. Puestow did not cite to any evidence or otherwise explain this finding. (Doc. 7-1, p. 17). However, in criticizing Dr. Puestow's opinion, Plaintiff also failed to cite evidence of degenerative disc disease. As previously discussed in connection with the listings, the medical evidence does not support a finding of degenerative disc disease. To the contrary, a MRI of Plaintiff's lumbar spine revealed no degenerative disc disease. (AR, p. 696).

Plaintiff further notes that Dr. Puestow's application of the listings to Plaintiff—"None Close" (*Id.* at 1111)—was very succinct. (Doc. 7-1, p. 17). Again, Plaintiff failed to cite to portions of the record in support of this complaint. As previously discussed, Plaintiff did not satisfy the criteria for the listings.

Having found no support for Plaintiff's challenge to the weight given to Dr. Puestow's opinion, the Magistrate Judge finds this claim of error without merit.

## C. Plaintiff's RFC

Plaintiff next claims the ALJ should have given greater weight to Dr. Lowe's RFC assessment. (Doc. 7-1, pp. 17-19). Specifically, Plaintiff believes the ALJ should have adopted the sitting, lifting, and carrying restrictions opined by Dr. Lowe. (*Id.* at 18).

An individual's RFC is the most she can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing level, the ALJ is responsible for assessing the claimant's RFC. *Id.* §§ 404.1546(c), 416.946(c). The ALJ must consider all relevant medical evidence and other evidence in the claimant's record. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The standard for determining the weight due to a treating physician's opinion is

the same as explained above. While medical opinions are used to determine the severity of a claimant's impairments, the claimant's RFC is a decision reserved for the ALJ. *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

As with Dr. Lowe's opinion evidence as to the listings, the ALJ gave little weight to Dr. Lowe's physical RFC assessment in the following:

> Dr. Lowe also provided a medical assessment of ability to do work-related activities (physical) dated April 2015 and indicated that the claimant is unable to lift or carry any more than 5 pounds for up to 1/3 of the day; she could stand or walk for only 10 minutes at a time; she could sit for only 15 minutes at a time; she should never perform postural activities; her conditions would affect her ability to reach, feel, and push/pull; her conditions would not allow her to work around heights, moving machinery, or in temperature extremes. (Exhibit B21F).
>
> The undersigned notes that the diagnostic medical evidence of record does not remotely support a finding that the claimant has a lower extremity or lower back conditions that is as severe as was reported in Dr. Lowe's opinions. There is no evidence to support a finding that her conditions meet a listing or would cause her to be as limited as Dr. Lowe opined in Exhibit B21F. The medical evidence of record therefore does not remotely support Dr. Lowe's opinions that the claimant's alleged impairments meet a listing. In fact, there is so little support for Dr. Lowe's opinion in the medical evidence of record that Dr. Lowe's opinions carry very little weight. For example, there was no positive straight leg raise tests reported in the medical evidence of record and diagnostic evidence was mostly unremarkable. In sum, there was very little relevant evidence in the medical evidence of record to support the opinions offered by Dr. Lowe regarding the claimant's physical complaints. (Exhibit B21F). . . .
>
> Little weight is given to the physical limitations opinions of the treating physician, Dr. Lowe, in Exhibit B21F. The opinions were not supported by Dr. Lowe's own treatment records. The diagnostic evidence of record did not support the extreme limitations ascribed to the claimant. The opinions included mental health opinions for which Dr. Lowe is not a specialist. The opinions indicated that the claimant's various impairments meet three separate medical listings which is an opinion that is not remotely supported by the medical evidence of record for the reasons set forth above and because the claimant's impairments do not satisfy the various requirements of those listings. Dr. Lowe perhaps has a treating relationship with the claimant that goes back for several years and the opinions were such that they provided a greater benefit to the claimant than the medical evidence of record would support. For these and other reasons set forth herein, the undersigned finds that the opinions in Exhibit B21F offered by Dr. Lowe are given little weight.

(AR, pp. 195, 199).

Substantial evidence supports the ALJ's decision to give little weight to Dr. Lowe's RFC assessment, particularly with respect to the sitting, lifting, and carrying limitations therein. The extreme limitations assessed by Dr. Lowe—Plaintiff could only lift and carry up to five pounds for one third of the day, and Plaintiff could only sit for fifteen minutes at a time—are entirely unsupported by the diagnostic imaging in the record. First, and importantly, Dr. Lowe did not explain why Plaintiff was limited in her ability to lift and carry. (*Id.* at 1131). He further opined that pain from degenerative joint disease of the lumbar spine limited Plaintiff's ability and sit. (*Id.* at 1132). However, as previously summarized herein and by the ALJ, the unremarkable diagnostic imaging in the record did not reveal a significant back impairment. (*Id.* at 193-194). Directly contrary to Dr. Lowe's opinion, MRI evidence cited by the ALJ showed no evidence of degenerative disc disease. (*Id.* at 193, 696). The ALJ also noted that Dr. Lowe's treatment records in Exhibit B15F mainly concerned complaints of abdominal pain, and the ALJ took into account Plaintiff's favorable response to pain-relief medication and steroid injections. (*Id.* at 193-194).

Upon finding Dr. Lowe's opinion was not owed controlling weight, the ALJ considered the appropriate factors to determine the weight that was due. The ALJ remarked that Dr. Lowe was Plaintiff's treating physician and had treated her for several years. (*Id.* at 199). Primarily, Dr. Lowe had treated Plaintiff for chronic low back pain, osteoarthritis of her left knee, and abdominal pain. (*Id.* at 195). Though Dr. Lowe had opined as to Plaintiff's mental health, the ALJ noted the physician was not a specialist mental health care provider. (*Id.* at 195, 199). The ALJ found Dr. Lowe's opinion was inconsistent with diagnostic imaging in the record and not supported by his treatment notes. (*Id.*). Though Plaintiff disagrees with the ALJ's decision to

14

give Dr. Lowe's opinion evidence little weight, she declines to cite to portions of the record to bolster her argument. This claim of error is without merit.

### D. Vocational Expert Testimony

During the administrative hearings, the ALJ submitted a series of hypotheticals to the vocational experts present. In addition to presenting a hypothetical containing the RFC ultimately assigned to Plaintiff, the ALJ also posed more restrictive hypotheticals. Plaintiff complains the ALJ should have adopted vocational expert testimony given in response to these more restrictive hypotheticals. (Doc. 7-1, pp. 19-21).

"In order for a [vocational expert's] testimony to constitute substantial evidence that a significant number of jobs exists, 'the question[s] must accurately portray a claimant's physical and mental impairments.'" *Cole*, 661 F.3d at 939 (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)).

Plaintiff's claim is based on a faulty premise: that her RFC is more limited than that found by the ALJ. As the ALJ adopted the vocational expert testimony that was consistent with Plaintiff's RFC (AR, pp. 225-226), the ALJ's conclusion that Plaintiff can perform other work is supported by substantial evidence.

### E. Plaintiff's Credibility

Last, Plaintiff contends the ALJ erred by finding her alleged symptoms less than credible. (Doc. 7-1, pp. 21-24).

Limiting effects imposed by symptoms are considered in the disability evaluation process. 20 C.F.R. §§ 404.1529(a), 416.929(a). If objective evidence from an acceptable source shows the claimant suffers from a medical impairment that could reasonably produce the symptoms alleged, the ALJ may evaluate the intensity and persistence of those symptoms. *Id.*

15

The ALJ is not required to accept the claimant's allegations as true. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). In addition to identifying inconsistencies between the alleged symptoms and the evidence of record, the ALJ may consider the claimant's daily activities, the extent and duration of the symptoms alleged, factors that exacerbate or relieve the symptoms, and any other relevant factors. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996). The ALJ's credibility evaluation must be supported by specific reasons that are grounded in evidence. SSR 96-7p, 1996 WL 374186, at *4. Great weight must be given to well-supported credibility decisions. *Cruse*, 502 F.3d at 542 (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

Finding Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, the ALJ found the intensity, persistence, and limiting effects alleged from these symptoms were not entirely credible because:

> The treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges. In addition, there are a number of inconsistencies which detract from the claimant's credibility.
>
> The claimant's presentation at the hearing did not bolster her credibility. The claimant's alleged limitations presented at the hearing were rather extreme considering the overall medical evidence of record. In fact, the claimant's allegations in general do not appear to be supported in full by the medical evidence of record. ***For example, the claimant has reported that she has extreme levels of pain in her spine, but the diagnostic evidence of record showed very limited findings which suggests that her allegations were not fully corroborated by the medical evidence of record.*** Therefore, much of the claimant's reports of limitations appear to be self-serving possibly in an attempt to appear to be more limited than she truly is.
>
> The claimant does have a history of multiple carpal tunnel surgeries on her hands, but her last surgery was over four years ago and the medical record did not include any consistent or even significant complaints of pain and limitations in her hands and wrists for several years. In October 2012, the claimant injured her

16

> finger while working on a car. Additionally, the claimant has been found to be able to perform sedentary level exertional activity with additional limitations relating to fine and gross manipulation, which adequately takes into consideration the claimant's alleged carpal tunnel syndrome condition.
>
> Finally, the claimant has not had significant formal mental health treatment over the years and there was a lack of information in the overall medical evidence of record to support her allegations of frequent severe panic attacks. Also, one treatment record indicated that the claimant reported no depression. In sum, the functional restrictions alleged by the claimant are disproportionate to the clinical findings in the medical evidence of record.

(AR, p. 198) (emphasis added).

The only portion of the ALJ's credibility analysis specifically challenged by Plaintiff is the ALJ's finding that the diagnostic evidence of record did not corroborate her claims of spinal pain. (Doc. 7-1, p. 23). Without citing to the record as required by this Court's order (Doc. 6, p. 2), Plaintiff states her physicians' findings support her allegations of pain. (Doc. 7-1, p. 23).

The ALJ's thorough summary of the unremarkable diagnostic testing provides ample support for finding the allegations of severe symptoms less than credible. (AR, pp. 193-194). Further, the ALJ's credibility evaluation rested on additional, unchallenged bases. The ALJ correctly noted that Plaintiff's course of treatment for her carpal tunnel, the infrequency of her related complaints, and her ability to perform car maintenance did not render her hands fully dysfunctional. (*Id.* at 198). In addition, the ALJ noted that Plaintiff alleged severe, frequent panic attacks yet sought no formal mental health treatment and had previously reported no depression. (*Id.*). These inconsistencies provided the ALJ grounds for giving less weight to Plaintiff's allegations.

## VI. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff's *Motion for Summary Judgment* (Doc. 7) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen days, after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen days after being served with a copy thereof. Failure to file specific objections within fourteen days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 21st day of July, 2017.

/s/ Joe B. Brown
JOE B. BROWN
UNITED STATES MAGISTRATE JUDGE